Ryan J. GOENS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–1006–CR–277.

Court of Appeals of Indiana.

Feb. 14, 2011.

---

Theodore F. Adams, Baldwin Adama Knierim & Kamish, Franklin, Indiana, for Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Ryan Goens ("Goens") has filed an interlocutory appeal challenging the Johnson Superior Court's denial of his motion to suppress. Goens argues that the traffic stop that resulted in his arrest for driving while intoxicated was not supported by reasonable suspicion. We agree and reverse the trial court's denial of Goens's motion to suppress.

### Facts and Procedural History

On April 3, 2009, Officer Greg Lengerich of the Greenwood Police Department observed a Chevrolet minivan "without any operable brake lights." Appellee's App. pp. 1, 7. The officer initiated a traffic stop

of the vehicle, which was driven by Goens and contained one passenger, Aaron Garza ("Garza"). During the stop, Officer Lengerich "could smell the strong odor of an alcoholic beverage emitting from [Goens]." *Id.* at 19. Goens was given a warning citation for a vehicle equipment violation, and the officer then asked him to step out of the vehicle.

Officer Lengerich proceeded to conduct standard field sobriety tests. Goens failed the horizontal gaze nystagmus, one-legged stand, and walk-and-turn tests. Goens was also offered a portable breathalyzer test, and the test indicated positive for the presence of alcohol. Goens then agreed to take a certified breath test, which established an alcohol concentration equivalent ("ACE") of .21 grams of alcohol per 210 liters of breath.

On April 8, 2009, Goens was charged with Class D felony operating a vehicle while intoxicated, Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class A misdemeanor operating a vehicle with an ACE of .15 or more, Class C misdemeanor operating a vehicle while intoxicated, and Class C misdemeanor operating a vehicle with an ACE of .08 or more. The State also alleged that Goens was a habitual substance offender.

On January 14, 2010, Goens filed a motion to suppress all evidence obtained as a result of the traffic stop. In the motion, Goens claimed that Officer Lengerich lacked reasonable suspicion to stop his vehicle because the vehicle had two operable stop lamps and was therefore in compliance with Title 9 of the Indiana Code. Goens therefore argued that "the stop, detention, subsequent arrest and seizure violated [his] rights secured by" the Fourth and Fourteenth Amendments and under Article One, Section Eleven. Appellant's App. p. 13.

A hearing was held on the motion to suppress on April 12, 2010. Officer Lengerich was unable to appear, and the parties stipulated to the admission of his deposition testimony. During his deposition, Officer Lengerich stated that he could not recall whether only one stop lamp was not working or if all of the vehicle's stop lamps were inoperable. Appellee's App. p. 15. At the hearing, Garza testified that he observed another officer move Goens's vehicle to a nearby parking lot after Goens's arrest, and that only the stop lamp on the rear passenger's side was inoperable. Tr. p. 24. At the conclusion of the suppression hearing, the trial court stated, "I think it has been established that there were two (2) lamps lighted." Tr. p. 52.

Despite finding that two of the vehicle's stop lamps were operating at the time of the stop, the trial court denied Goens's motion to suppress after concluding that it was reasonable for the officer to stop the vehicle for one inoperable stop lamp, if for no other reason than to inform the driver that the light was burned out. Tr. p. 53. Thereafter, Goens asked the trial court to certify its interlocutory order to allow for an immediate appeal. On May 12, 2010, the trial court granted Goens's motion. Our court accepted jurisdiction of this appeal on July 16, 2010.

## Standard of Review

Goens argues that the trial court abused its discretion when it denied his motion to suppress. We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Montgomery v. State,* 904 N.E.2d 374, 377 (Ind.Ct.App. 2009), *trans. denied.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In conducting our review, we do not reweigh the evidence, and we consider conflicting evi-

dence in a light most favorable to the trial court's ruling. *Webster v. State*, 908 N.E.2d 289, 291 (Ind.Ct.App.2009), *trans. denied*. However, we also consider uncontested evidence favorable to the defendant. *Id.*

**Discussion and Decision**

■ Goens argues that his vehicle was equipped with two operating stop lamps and was in compliance with Indiana Code section 9–19–6–17(a). Therefore, Officer Lengerich lacked reasonable suspicion to conclude that Goens had committed an infraction or ordinance violation, the required predicate to initiate the traffic stop at issue. The State argues that the officer properly stopped Goens because his vehicle was not in compliance with either section 9–19–6–17 or section 9–21–7–1, the "good working order statute."

■ " 'It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation.' " *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind.Ct.App. 2005), *trans. denied* (quoting *Peete v. State*, 678 N.E.2d 415, 419 (Ind.Ct.App. 1997), *trans. denied* ). The determination of reasonable suspicion and probable cause requires de novo review on appeal. *See Myers v. State*, 839 N.E.2d 1146, 1150 (Ind.2005).

Goens concedes that the stop lamp (or brake light) on the rear passenger side of his vehicle was inoperable. But he disputes the State's initial assertion that none of his stop lamps were working properly.

The State relies on Officer Lengerich's statement in his narrative report that Goens was operating the vehicle "without any operable brake lights." Appellee's App. p. 1. But in his deposition, the officer testified, "I don't recall if it didn't have any [operable brake lights] or just one that wasn't working." *Id.* at 15. Passenger

Garza, who observed the vehicle as it was driven away to a nearby parking lot after Goens's arrest, testified that only the passenger side stop lamp was inoperable. Tr. p. 25. The trial court weighed this evidence and concluded, "I think it has been established that there were two (2) lamps lighted." Tr. p. 52.

■ Consequently, we must first consider whether Goens's vehicle, which had two functioning stop lamps, was in compliance with Indiana Code section 9–19–6–17(a). The general rule of statutory construction is that

> [p]enal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. And statutes concerning the same subject matter must be read together to harmonize and give effect to each.

*Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005)

Indiana Code section 9–19–6–17(a) provides:

> A motor vehicle may be equipped, and when required under this chapter must be equipped, *with a stop lamp or lamps* on the rear of the vehicle that:
>
> (1) displays a red or an amber light, or any shade of color between red and amber, visible from a distance of not less than one hundred (100) feet to the rear in normal sunlight;

(2) will be actuated upon application of the service (foot) brake; and

(3) may be incorporated with at least one (1) other rear lamp.

(Emphasis added). The only other statute referencing the number of stop lamps required under Indiana Code chapter 9–19–6, provides that

[A] person may not:

(1) sell; or

(2) drive on the highways;

in Indiana a motor vehicle, including a motorcycle or motor-driven cycle unless the vehicle is equipped with *at least one (1) stoplight* meeting the requirements of section 17 of this chapter.

Ind.Code § 9–19–6–6 (emphasis added). A violation of Indiana Code chapter 9–19–6 is a Class C infraction. *See* Ind.Code § 9–19–6–24.

When read together, these statutes require at least **one, but only one,** functioning stop lamp.[1] The trial court concluded that two of the three stop lamps on Goens's vehicle were working. Therefore, there was no violation of Indiana Code section 9–19–6–17 to support reasonable suspicion for the stop.

In the alternative, the State argues that Goens's vehicle was not in compliance with Indiana Code section 9–21–7–1, i.e. "the good working order statute." That section provides in pertinent part:

A person may not drive or move on a highway a ... motor vehicle ... unless the equipment upon the vehicle is in good working order and adjustment, as required in this article, and the vehicle is in a safe mechanical condition that

does not endanger the person who drives the vehicle, another occupant of the vehicle, or a person upon the highway.

A violation of chapter 9–21–7 is a Class C infraction. *See* Ind.Code § 9–21–7–13.

The State has not alleged that the one inoperable stop lamp caused an unsafe mechanical condition; therefore we need only determine whether Goens's vehicle was in good working order. In support of its argument, the State relies on *Freeman v. State,* 904 N.E.2d 340 (Ind.Ct.App.2009).

In *Freeman,* the defendant was stopped because of an inoperable tail lamp. While concluding that the officer "validly stopped Freeman's vehicle because the tail lamp was not illuminated," we held: "[i]mplicit in [section 9–21–7–1] is a requirement that before operating a motor vehicle, one inspect his or her vehicle to ensure that its equipment, including taillights, works." *Id.* at 342–43 (quoting *Schumm v. State,* 866 N.E.2d 781, 795 (Ind.Ct.App.2007), *clarified on reh'g at* 868 N.E.2d 1202). We further observed that a burned out tail lamp does not meet the requirement under section 9–21–7–1 that the motor vehicle must be in good working order. *Id.*

Goens argues that the State's reliance on *Freeman* is misplaced. He observes that, section 9–21–7–1 is found in Article 21, which is entitled "Traffic Regulation,"[2] and Article 21 "is devoid of any mention of stop lamps." Appellant's Br. at 6; I.C. § 9–21–7–1 ("A person may not drive or move on a highway a ... motor vehicle ... unless the equipment upon the vehicle is in good working order and adjustment,

---

1. The United States Department of Transportation requires all passenger cars of less than eighty inches to have two tail lamps, two stop lamps, and one "high-mounted" stop lamp. 49 C.F.R. § 571.108 (2006).

2. Chapter 9–21–7's placement in Article 21 is curious because the contents of that Article generally concern operation of a vehicle on a roadway, and not mechanical requirements for vehicles, which are generally found in Article 9–19.

*as required in this article, ...*") (emphasis added).

Goens's assertion that "stop lamps" are not specifically referenced in Article 21 is correct. Section 9–21–7–2 does require vehicles traveling on Indiana highways between sunset and sunrise to "display lighted head lamps and other illuminating devices[.]"[3] Further, that section provides that "[a]ll lamp equipment required for vehicles described in IC 9–19–6 shall be lighted." But the clear import of this statute is to require vehicles traveling on darkened roadways to have operating headlights and taillights so that the vehicle is visible to others. Because stop lamps are illuminated only "upon application of the service (foot) brake[,]" *see* I.C. § 9–19–6–17, we cannot conclude that General Assembly's reference to chapter 9–19–6 in Indiana Code section 9–21–7–2 was to require that stop lamps be lighted from sunset to sunrise. Simply said, a stop or brake lamp is not the same equipment as, does not serve the same function as, and is regulated differently from, a tail lamp under Indiana statutes.

Furthermore, as set forth above, sections 9–19–6–6 and –17 only require at least one functioning stop lamp. Therefore, if the good working order statute is applied to stop lamps, Goens's vehicle was in good working order as required by section 9–21–7–1 because two of the three stop lamps on the vehicle were functioning properly at the time of the stop. For all of these reasons, we conclude that Goens did not operate his vehicle in violation of either section 9–19–6–17 or section 9–21–7–1.

■ "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *State v. Rager,* 883 N.E.2d 136, 139–40 (Ind.Ct.App.2008) (citations omitted); *see also Meredith v. State,* 906 N.E.2d 867, 870 (Ind.2009). As well as having a constitutional dimension, this limitation is one of common sense. While we as citizens desire and expect law enforcement officers to enforce the requirements of state statutes as they pertain to motor vehicles, if the condition of our motor vehicles clearly and visibly meets these requirements, we should not be subject to a traffic stop on suspicion of an alleged violation thereof. Because the condition of Goens's vehicle could not reasonably appear to violate applicable Indiana statutes at the time it was observed by Officer Lengerich, the vehicle's condition could not and did not support reasonable suspicion for the traffic stop. We therefore conclude that the trial court abused its discretion when it denied Goens's motion to suppress.

Reversed.

FRIEDLANDER, J., and MAY, J., concur.

---

**3.** But section 9–21–7–2 does apply to tail lamps, which are illuminating devices described in chapter 9–19–6. Therefore, although not specifically stated in *Freeman,* Indiana Code section 9–21–7–1 does apply to tail lamps.