# FOR PUBLICATION



**FILED**

Feb 27 2014, 9:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**STEVEN E. RIPSTRA**
Ripstra Law Office
Jasper, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 19A05-1310-CR-489 |
| | ) | |
| MICHAEL E. CUNNINGHAM, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE DUBOIS SUPERIOR COURT
The Honorable Mark R. McConnell, Judge
Cause No. 19D01-1305-FD-460

February 27, 2014

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

The State appeals the trial court's granting of Michael Cunningham's motion to suppress marijuana and a marijuana pipe. We affirm.

## Issue

The dispositive issue is whether Cunningham validly consented to a pat-down search that revealed the presence of marijuana on his person and further led to discovery of the pipe in his vehicle.

## Facts

In the early morning hours of May 17, 2013, Officer Andrew Hammock of the Huntingburg Police Department pulled over a vehicle driven by Cunningham because one of the two tail lamps of Cunningham's vehicle was white, not red, because the red lens covering was missing. Another officer arrived on the scene soon thereafter to assist Officer Hammock. After Officer Hammock told Cunningham why he was pulled over, Cunningham expressed surprise and asked to get out of his vehicle to see the tail lamp for himself. Officer Hammock responded, "that was fine but I would pat him down for any weapons just for officer safety issue." Tr. p. 6. Cunningham answered "that was fine," got out of the vehicle, and subjected himself to a pat-down by Officer Hammock. Id. During the pat-down, Officer Hammock felt what he knew was a pill bottle and asked Cunningham what was inside of it. Cunningham told Officer Hammock that the bottle contained marijuana, took it out of his pocket, and gave it to Officer Hammock. Officer Hammock observed that the bottle contained a green leafy substance that smelled like marijuana. He then asked Cunningham "if there was anything else on his person that . . .

2

I needed to be aware of," and Cunningham answered that he had a pipe in his vehicle. Id. at 7. Officer Hammock then gave Cunningham his Miranda warnings, Cunningham retrieved the pipe, and Officer Hammock placed him under arrest.

The State charged Cunningham with Class A misdemeanor possession of marijuana and Class A misdemeanor possession of paraphernalia. The State also filed notice to seek enhanced punishment for Cunningham based on prior convictions for both offenses. Cunningham filed a motion to suppress the marijuana and the pipe. The trial court held a hearing on the matter, at which Cunningham challenged both the legality of the initial stop and the ensuing pat-down search. The trial court granted Cunningham's motion to suppress on the basis that the initial stop was illegal. The State now appeals.

**Analysis**

We generally review a trial court's ruling on a motion to suppress as a matter of sufficiency. State v. Shipman, 987 N.E.2d 1122, 1126 (Ind. Ct. App. 2013). We will neither reweigh evidence nor judge witness credibility. Id. "Our role is to determine whether the record discloses substantial evidence of probative value that supports the trial court's decision." Id. When appealing the granting of a motion to suppress, the State is challenging a negative judgment and must show that the trial court's ruling was contrary to law. Id. Also, although we give deference to a trial court's factual determinations, we review de novo its ultimate ruling regarding the constitutionality of a search or seizure. Belvedere v. State, 889 N.E.2d 286, 287 (Ind. 2008). Consistent with this standard, we will affirm a trial court's ruling on a motion to suppress if it is sustainable on any legal

3

theory supported by the record, even if the trial court did not use that theory. Gonser v. State, 843 N.E.2d 947, 949 (Ind. Ct. App. 2006).

A traffic stop is permissible under the Fourth Amendment to the United States Constitution when an officer has reasonable suspicion that a traffic law, or other law, has been violated. Sanders v. State, 989 N.E.2d 332, 335 (Ind. 2013). The trial court ruled that the stop of Cunningham's vehicle was not supported by any traffic infraction observed by Officer Hammock. The trial court relied upon Indiana Code Section 9-19-6-4, which states in part:

> (a) Except as otherwise provided in this section:
>
> (1) a motor vehicle, trailer, semitrailer, and pole trailer; and
>
> (2) any other vehicle that is drawn at the end of a train of vehicles;
>
> must be equipped with at least one (1) tail lamp mounted on the rear that when lighted as required in this chapter, emits a red light plainly visible from a distance of five hundred (500) feet to the rear.
>
> * * * * *
>
> (c) Excluding a truck-tractor semitrailer-semitrailer combination equipped with a B-train assembly (as defined in IC 9-13-2-13) governed by section 7 of this chapter, truck-tractor, motorcycle, or motor-driven cycle:
>
> (1) a motor vehicle, trailer, semitrailer, and pole trailer; and
>
> (2) any other vehicle drawn at the end of a train of vehicles; that is registered in Indiana and manufactured or assembled after January 1, 1956, must be equipped with at least two (2) tail lamps mounted on the rear that, when lighted, complies with this section.

4

The trial court construed this statute as requiring "only that a motor vehicle be equipped with at least one (1) tail lamp mounted on the rear that when lighted emits a red light plainly visible from a distance of five hundred (500) feet to the rear." App. p. 29. This construction of the statute apparently relies only upon subsection (a); however, subsection (c) applies to vehicles manufactured after January 1, 1956, such as Cunningham's vehicle undisputedly was, and requires two operating tail lamps. See Freeman v. State, 904 N.E.2d 340, 342-43 (Ind. Ct. App. 2009) (holding that Section 9-19-6-4 requires vehicles to have two constantly illuminated tail lamps that emit red light, that a rear-mounted brake-only red light does not satisfy this requirement, and stop of vehicle was justified where one of vehicle's tail lamps was burned out).

We recently re-addressed Section 9-19-6-4 in Kroft v. State, 992 N.E.2d 818 (Ind. Ct. App. 2013). We again held that the statute required vehicles to have two operating tail lamps that emit a red light plainly visible from 500 feet. Kroft, 992 N.E.2d at 821. We also held that the defendant in that case had not violated the statute simply because the red lens of one of the tail lamps had a dime-sized hole in it that caused some white light to be emitted along with red light, stating, "[t]here is no requirement about 'only' red light being visible from a distance of 500 feet." Id. at 821-22. Here, by contrast, the red lens from one of Cunningham's tail lamps was completely missing, and it was emitting only white light and no red light. As such, Cunningham's vehicle was not in compliance with Section 9-19-6-4, and Officer Hammock was entitled to pull him over for that violation. See Freeman, 904 N.E.2d at 342-43.

Although the trial court erred in concluding that the stop of Cunningham's vehicle was illegal, we proceed to address the ensuing discovery of marijuana and the pipe during that stop, given that we must affirm a motion to suppress ruling if it is supported by any evidence in the record. See Gonser, 843 N.E.2d at 949. Among other alternative arguments, Cunningham claims that although he "consented" to being patted down by Officer Hammock after exiting the vehicle, such consent was "invalid" because it was merely "acquiescence to police actions and directions . . . ." Appellee's Br. p. 12. We agree with Cunningham on this point.

We first note that absent consent by Cunningham, Officer Hammock could not have legally conducted a pat-down search of Cunningham. Under the Fourth Amendment, in order to conduct a pat-down search of a person, an officer must have knowledge of facts that would warrant a reasonably prudent person in the same circumstances to believe that the officer was in danger. Hill v. State, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011), trans. denied. Although an officer need not be absolutely certain that an individual is armed, there must be more than an "inchoate and unparticularized suspicion or 'hunch'" of possible danger. Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968). Specific to the situation faced by Officer Hammock, it is well-settled that police officers are not permitted to conduct pat-down searches of occupants of vehicles pulled over during a routine traffic stop unless there is reasonable suspicion to believe that the person to be subjected to the frisk is armed and dangerous. Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 784 (2009); see also Mitchell v. State, 745 N.E.2d 775, 781-82 (Ind. 2001). Although an officer may order an occupant

6

out of the vehicle during a traffic stop as a matter of routine because of officer safety concerns, the additional, more intrusive step of a pat-down search is not automatically justified. See id.; Knowles v. Iowa, 525 U.S. 113, 117-18, 119 S. Ct. 484, 488 (1998); Mitchell, 745 N.E.2d at 781. Even if a person exits a vehicle during a traffic stop without the officer's prior permission, a pat-down search is not justified if the person is otherwise cooperative and does not make furtive or threatening movements. See Jett v. State, 716 N.E.2d 69, 70-71 (Ind. Ct. App. 1999). A generalized suspicion by an officer that "everyone can be armed" does not authorize a pat-down search. Id. at 71.

Here, there is no evidence of hostility, aggressiveness, furtive movements, or anything of that nature on Cunningham's part prior to the pat-down search, or at any time during the traffic stop for that matter. Cunningham was the only occupant of the vehicle, and another officer was on the scene backing up Officer Hammock when the pat-down occurred. Cunningham merely asked to see the broken-out tail lamp because he thought it was only cracked, not completely broken. There was nothing inherently threatening in that request, and Officer Hammock did not testify as to feeling threatened. Instead, he seems to have stated that he would pat down Cunningham if he left the vehicle out of a generalized concern for "officer safety" without any particular facts that would indicate such a concern. If Officer Hammock believed it was more dangerous for Cunningham to be outside of his vehicle than inside of it, he could have taken the less-invasive step of ordering him to stay inside. There was not sufficient reasonable suspicion that Cunningham was armed and dangerous that would support a pat-down search in the absence of Cunningham's consent.

Regarding consent, it is a well-established exception to the requirements of the Fourth Amendment. Thayer v. State, 904 N.E.2d 706, 711 (Ind. Ct. App. 2009). If the State relies upon consent to justify a warrantless search, it has the burden of proving that such consent was freely and voluntarily given. Nowling v. State, 955 N.E.2d 854, 862 (Ind. Ct. App. 2011), aff'd on r'hg, trans. denied. "A valid consent to search is an exception to the warrant requirement unless it is procured by fraud, duress, fear, or intimidation, or where it is 'merely a submission to the supremacy of the law.'" Id. (quoting Melton v. State, 705 N.E.2d 564, 567 (Ind. Ct. App. 1999)). We must consider the totality of the circumstances in determining whether consent was validly given for a search. Id. Consent to a search may be given either expressly or implicitly, by word or deed. Id. "Consent cannot be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." Hannoy v. State, 789 N.E.2d 977, 988 (Ind. Ct. App. 2003), aff'd on r'hg, trans. denied. Additionally, mere acquiescence to a "claim of lawful authority" to search by the police is not a valid consent; "'[t]he claim of such a right, though not expressly stated, is implicit when the police, instead of asking for permission to make the search, say they have come to search or that they are going to search.'" State v. Jorgensen, 526 N.E.2d 1004, 1007 (Ind. Ct. App. 1988) (quoting W. LaFave, Search & Seizure § 8, 2(a) at 179 (2nd ed. 1987)).

We conclude that Officer Hammock clearly did not ask Cunningham for permission to conduct a pat-down search. Instead, Officer Hammock's testimony demonstrates that he gave an ultimatum to Cunningham: if he decided to exit the vehicle to inspect the tail lamp, "I <u>would</u> pat him down for any weapons just for officer safety issue." Tr. p. 6 (emphasis added). Phrased in this way, Cunningham had no choice but to submit to the pat-down when he exited the vehicle, despite the absence of reasonable suspicion that he was armed and dangerous. Cummingham's response to Officer Hammock, "That was fine," only represents Cunningham's mere acquiescence or submission to Officer Hammock's claimed right to conduct a pat-down search, even though the officer had no such right. <u>Id.</u> The State has failed to establish that Cunningham's purported consent to the pat-down was constitutionally valid. As such, we conclude that the discovery of the marijuana in the pill bottle during the illegal pat-down and the subsequent discovery of the pipe must be suppressed as fruits of the poisonous tree. See <u>Hill</u>, 956 N.E.2d at 179.

**Conclusion**

Although Officer Hammock was entitled to pull Cunningham over for having only one red tail lamp, the ensuing pat-down search of Cunningham violated the Fourth Amendment and the resulting fruits of that search must be suppressed. We affirm the granting of the motion to suppress.

Affirmed.

ROBB, J., concurs.

BROWN, J., dissents with opinion.

9

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,     )
    )
    Appellant-Plaintiff,     )
    )
    vs.     )     No. 19A05-1310-CR-489
    )
MICHAEL E. CUNNINGHAM,     )
    )
    Appellee-Defendant.     )

**BROWN, Judge, dissenting**

While I concur with the majority's conclusion that Officer Hammock was entitled to pull Cunningham over for having only one red tail lamp, I respectfully dissent from the conclusion that Cunningham's Fourth Amendment rights were violated when he was searched. The trial court based its decision entirely on its perceived illegality of the traffic stop and made no determination as to the validity of Cunningham's consent to a pat-down search. The majority concludes that "Cunningham had no choice but to submit to the pat-down when he exited the vehicle . . . ." *Supra* at 9. In my view, however, the circumstances did not necessitate that Cunningham exit his vehicle, and indeed he chose to do so with full knowledge that, if he exited the vehicle, it would result in a pat-down search. During a traffic stop, an officer may order a vehicle's occupant to remain in the

10

vehicle. See Starr v. State, 928 N.E.2d 876, 879 (Ind. Ct. App. 2010) (noting that during a traffic stop a "passenger who had exited the vehicle and refused to comply with an officer's directive to return to it was properly arrested for resisting law enforcement"). Officer Hammock presented Cunningham with a choice on how to proceed, and in opting to exit the vehicle, Cunningham consented to the pat-down search, both in his verbal response to the officer that is was "fine" to be patted down, and in his actions. There was no element of coercion, "fraud, duress, fear, or intimidation," or a mere submission to the supremacy of the law. Nowling v. State, 955 N.E.2d 854, 862 (Ind. Ct. App. 2011), aff'd on reh'g, trans. denied (quoting Melton v. State, 705 N.E.2d 564, 567 (Ind. Ct. App. 1999)). The officer did not order him out of the vehicle and initiate an illegal search. Cunningham did not acquiesce to police actions and directives; the police were neither acting nor directing but rather responding to Cunningham's request to get out of his vehicle.

Also, to the extent that Officer Hammock recognized the item in Cunningham's pocket to be a pill bottle and not a weapon, Cunningham told the officer that the bottle contained marijuana, and indeed Cunningham removed the bottle from his own pocket and handed it to the officer. Further, he informed the officer that he had a pipe in his vehicle and retrieved it. As the majority notes, we must consider the totality of the circumstances and under these circumstances, I do not believe that Cunningham's Fourth Amendment rights were infringed upon, and thus I respectfully dissent and would reverse the trial court's grant of the motion to suppress.